UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
                              :

GREGORY REDDICK,

                              :

          Petitioner,         REPORT & RECOMMENDATION

                              :

       - against -         09 Civ. 9500 (RJH) (MHD)

                              :

B. YELICH

                              :

          Respondent.
------------------------------------x

**TO THE HONORABLE RICHARD J. HOLWELL, U.S.D.J:**


    Petitioner Gregory Reddick filed this timely <u>pro</u> <u>se</u> petition

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to

challenge a 2007 judgment in New York State Supreme Court, New York

County, convicting him, after a guilty plea, of criminal possession

of a forged instrument in the second degree. The trial court

sentenced Reddick to a prison term of two and one-half to five

years. The Appellate Division, First Department, unanimously

affirmed petitioner's conviction, and the New York Court of Appeals

denied leave to appeal. Petitioner is currently serving his

sentence at Franklin Correctional Facility.


    In his amended petition, petitioner claims that he is entitled

to habeas relief because the state trial court erroneously denied

his suppression motion without first holding a Mapp/Dunaway hearing. (Am. Pet., 3, Jan. 11, 2010). In substance, petitioner challenges the validity of his arrest and thus contends that the property seized from him should have been suppressed. (Id.). Respondent opposes the application, contending that Reddick's claim is not cognizable in a habeas proceeding. (Mem. of Law in Opp'n to Pet. Writ of Habeas Corpus ("Mem. in Opp'n"), 13, July 30, 2010).

For reasons that follow, we recommend that the writ be denied and the petition dismissed.

## PROCEDURAL AND FACTUAL BACKGROUND

Reddick's conviction arose from events that took place on May 31, 2006. At approximately 3:30 p.m. Police Officer Karen O'Neill saw petitioner and co-defendants Gerald Davis and Roberta Tubberville sitting in a vehicle parked on Fifth Avenue between 49th and 50th Streets. (Decl. of Asst. Att'y Gen. Lea L. La Ferlita in Support of Mem. in Opp'n Ex. B (People's App. Br.), 1, July 30, 2010).[1] After witnessing Davis get out of the car and hand an

---

[1] Apparently because Reddick pled guilty in state court, the pertinent transcripts of proceedings before the trial judge could not be located by respondent's counsel. (Mem. in Opp'n, 6-7, nn. 4, 5). Nonetheless, the statements made in those proceedings that

unidentified woman two Saks Fifth Avenue bags in exchange for cash, some of which Davis then handed to petitioner and Tubberville, the police decided to follow the vehicle and observed petitioner and Davis alternately driving the car. (Id. at 1-2). Upon entering the car's license plate numbers into their computer, the police learned that the car's registration had been suspended for lack of insurance. (Id. at 2). The police then stopped the car and asked all three occupants to get out. (Id.). When Davis could not produce a driver's license, the police arrested him and recovered from Davis's pocket an Amoco gas card in the name of Katherine Nolan and an American Express card in the name of David Xiao. (Id.). The police then arrested Reddick, who also had no driver's license, and found $477.00 in cash on his person. (Id. at 2, 6). In a subsequent search of the vehicle, the police recovered a wallet containing four more credit cards in Katherine Nolan's name, two designer handbags and a Saks Fifth Avenue receipt that showed that the handbags had cost over $3,000.00 and had been purchased earlier that day using Nolan's credit cards. (Id. at 2, 5, 6-7). Further investigation revealed that petitioner had slipped passed security to enter the office building where Nolan and Xiao worked and that

---

pertain to petitioner's Fourth Amendment claim are quoted in the state-court appellate briefs, and the accuracy of those quotations is not in question.

neither petitioner nor Davis had had permission to use Nolan's or Xiao's credit cards. (Mem. in Opp'n at 7).

A New York County grand jury returned an indictment charging petitioner with one count of identity theft in the first degree (Penal Law § 190.80(1)), two counts of forgery in the second degree (Penal Law § 170.10(1)), two counts of criminal possession of a forged instrument in the second degree (Penal Law § 170.25), six counts of grand larceny in the fourth degree (Penal Law § 155.30(4)), six counts of criminal possession of stolen property in the fourth degree (Penal Law § 165.45(2)) (possession of a stolen credit card), and one count of criminal possession of stolen property in the fourth degree (Penal Law § 165.45(1) (possession of property worth more than $1,000)). (People's App. Br., 2-3). A copy of the People's Voluntary Disclosure Form ("VDF"), which detailed the information relating to the arrest of petitioner and Davis and the subsequent police investigation into the stolen property, was filed with the court and served on petitioner. (Id. at 6). The court also read aloud from the People's write-up of the case, contained in the People's Case Information Sheet ("CIS"), which stated that Reddick had been stopped and searched after police discovered that the car that the men had been driving had a suspended registration. (La Ferlita Decl. Ex. A (Reddick App. Br.),

4

3-4; People's App. Br., 7).

Petitioner filed an omnibus motion, dated August 16, 2006, in which he moved under Dunaway v. New York, 442 U.S. 200 (1979), and Mapp v. Ohio, 367 U.S. 643 (1961), to suppress all evidence, including physical evidence, obtained as a result of his allegedly unlawful arrest. (Suppression Docs., Omnibus Mot., 6-10, July 30, 2010). Petitioner requested that the court summarily grant his suppression motion, or, alternatively, hold a Mapp/Dunaway hearing to determine the admissibility of the evidence and whether the arrest had been proper. (Id. at 1, 6-10).[2]

In support of Reddick's motion to suppress, he argued that the police officers' observations of Davis and him were insufficient to establish probable cause to stop and search their vehicle. (Omnibus Mot. at 7-10). He claimed that the stop based on the license plate search was an "excuse" and "merely pretextual." (Id. at 7). He also asserted that the discovery that the car owner's license had been suspended gave the police authority only to question him to confirm

---

[2] In petitioner's omnibus motion, he also made several other applications -- to receive certain discovery materials, to sever his trial from Davis's trial, to inspect the grand jury minutes, and to preclude the use of his prior convictions to impeach him -- that are not relevant to this petition. (Id. at 1).

his identity, rather than authority to search him and the vehicle. (Id. at 7-8).

In opposition, the prosecutor argued that petitioner had failed to establish a factual dispute requiring a hearing. (Suppression Docs., Affirmation in Resp. to Reddick's Omnibus Mot., 2-3). He asserted that petitioner's failure to dispute the facts set forth in the CIS should be "deemed a concession" of the document's accuracy. (Id. at 3).

The Hon. Carol Berkman, S.C.J., denied the suppression motion. (Mem. in Opp'n, 6). In an oral decision, Justice Berkman stated that Reddick "[did] not argue that, indeed, that the computer was incorrect about the license being suspended." (People's App. Br., 10-11). She further noted that there was "no source of information and belief as to the sequence of events thereafter. The arrest of defendant followed the finding of very suspicious articles within the vehicle itself." (Id.). Justice Berkman concluded that a hearing was not required since petitioner's suppression motion did not sufficiently address or contest these facts. (Mem. in Opp'n, 6).

Subsequent to Justice Berkman's decision on petitioner's

omnibus motion, his original counsel withdrew, and the court appointed new counsel. (Reddick App. Br., 6). On February 13, 2007, petitioner's new counsel moved to reargue the suppression motion, claiming that the court had "overlooked or misapprehended" the factual and legal arguments that prior counsel had presented. (Suppression Docs., Mot. for Leave to Reargue Reddick's Mot. to Suppress ("Mot. to Reargue"), 17).[3] Petitioner again contended that the police had exceeded their authority in arresting him and searching the vehicle based on a traffic violation. (Id. at 5-18). He claimed that there were insufficient grounds for an arrest and search because the officer was in no danger, did not suspect a weapon, and at most believed that Reddick or a co-defendant had committed a traffic violation. (Id.). The court denied the renewed motion for a hearing as "untimely." (People's App. Br., 11).

On March 12, 2007, Reddick pled guilty to one count of criminal possession of a forged instrument in the second degree, admitting possession of a forged credit card receipt. (Mem. in Opp'n, 7). In doing so, he reserved the right to appeal the denial of his motion to suppress. (See Reddick App. Br., 15). On April 12, 2007, the court sentenced him to a prison term of two and one-half

---

[3] The pages of this motion are not numbered; we consider the first page of counsel's affirmation to be page one.

to five years. (Mem. in Opp'n, 8)

Reddick appealed to the Appellate Division, First Department. (Id. at 8). On this appeal, he again argued that the stop of the car based upon a traffic violation did not justify the subsequent searches, and that the trial court should not have denied his suppression motion without first conducting a Mapp/Dunaway hearing. (Reddick App. Br., 8-15). The appellate court affirmed petitioner's conviction on November 20, 2008. People v. Reddick, 56 A.D.3d 344, 344-45, 868 N.Y.S.2d 28, 28 (1st Dep't 2008), lv. denied, 11 N.Y.3d 929 (2009). The court noted:

> The discovery information set forth, in detail, a sequence of events leading up to a valid search, pursuant to the automobile exception, of the car in which [Reddick] was riding, and [he] failed to either controvert the specific information that was provided by the people . . . or to provide any other basis for suppression.

Id. at 344-45, 868 N.Y.S.2d at 28 (internal citations omitted). The court further held that the generality of the allegations in petitioner's moving papers, when read in the context of the detailed information provided by respondent in opposition to the motion, was insufficient to create a factual dispute requiring a hearing. Id. at 344, 868 N.Y.S.2d at 28.

8

By letter application dated November 21, 2008, Reddick sought leave to appeal to the New York Court of Appeals to challenge the denial of a suppression hearing. (La Ferlita Decl. Ex. D (Leave Request)). The Court of Appeals denied Reddick's leave application on January 30, 2009. (La Ferlita Decl. Ex. F (Certificate Den. Leave)).

## THE CURRENT PETITION

In petitioner's amended petition he asserts that he is entitled to habeas relief based on his Fourth Amendment claim. (Am. Pet., 2). In support of his contention, petitioner argues that the court erred in denying a <u>Mapp</u>/<u>Dunaway</u> hearing. (<u>Id.</u>). He again claims that the police did not have the authority to search his person and the car based on a traffic violation. (<u>Id.</u> at 3).

Respondent contends that petitioner is not entitled to habeas relief because petitioner's claims are not cognizable in a habeas proceeding. (Mem. in Opp'n, 13-16). Respondent further argues that the trial court's decision to summarily deny petitioner's suppression motion was proper because Reddick did not controvert the facts alleged by the police. (<u>Id.</u> at 17). According to

9

respondent, the lack of factual support for petitioner's general allegations obviated the need for a hearing to determine whether the search was unlawful. (Id. at 17-19). Finally, respondent claims that the arrest, search and seizure were lawful. (Id.).

## ANALYSIS

Petitioner's only claim in this proceeding is that his conviction should be vacated because the search of the vehicle and his person violated his rights under the Fourth Amendment. Fourth Amendment claims are not ordinarily subject to review in habeas proceedings. In Stone v. Powell, 428 U.S. 465, 482 (1976), the Supreme Court held that federal courts may not review the merits of a Fourth Amendment claim if the state provides an adequate procedural mechanism for the review of such claims. See also Withrow v. Williams, 507 U.S. 680, 682 (1993) (affirming the holding in Stone); Kirk v. Burge, 646 F. Supp.2d 534, 545 (S.D.N.Y. 2009) (denying a habeas claim claiming error on the basis of a denial of a Mapp/Dunaway hearing based on the Stone decision). The only exceptions to this rule are in the rare cases in which a petitioner shows that either (1) the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations, or (2) the state has provided a corrective

10

mechanism, but the defendant was precluded from using that mechanism because of an "unconscionable breakdown" in the underlying process. Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992); McCray v. Ercole, 2010 WL 6804661, *1 (S.D.N.Y. Dec. 16, 2010), adopted, 2011 WL 2496232 (S.D.N.Y. June 22, 2011). Petitioner cannot meet the requirements for either exception.

The Second Circuit has long held that Article 710 of the New York Criminal Procedure Law -- which provides a statutory mechanism to suppress unlawfully obtained evidence -- constitutes a facially adequate mechanism for adjudicating Fourth Amendment defenses in criminal proceedings. See, e.g., Capellan, 975 F.2d at 70 n.1; Daily v. New York, 388 F. Supp.2d 238, 249 (S.D.N.Y. 2005) ("The State of New York clearly has provided defendants . . . with the necessary corrective procedure through Section 710 of the New York Criminal Procedure Law").

Petitioner also cannot demonstrate an "unconscionable breakdown" in state procedure in his case. According to the Second Circuit, the "unconscionable breakdown" exception is extremely narrow and reserved for situations in which the state's corrective mechanism was "claimed to be meaningless [because] the totality of state procedures . . . did not provide rational conditions for

11

inquiry into federal-law . . . questions." <u>Capellan</u>, 975 F.2d at 70

(quoting Paul M. Bator, <u>Finality in Criminal Law and Federal Habeas</u>

<u>Corpus for State Prisoners</u>, 76 Harv. L. Rev. 441, 456-57 (1963)).

To meet this stringent standard, the violation of due process must

be extreme. Thus, an unconscionable breakdown of the underlying

process:

> is defined to encompass substantial failures in the
> process, such as the 'ambush[ing of the defendant] by
> unanticipated and unforeseeable application of a state
> court procedural rule at a time when it can no longer be
> complied with,' . . . or still more extreme
> circumstances, including bribery of a judge, use of
> torture, or use of perjured testimony.

<u>Poole v. New York</u>, 2009 WL 3009356, *6 (S.D.N.Y Sept. 21, 2009)

(quoting <u>Gomez v. LeFevre</u>, 1989 WL 63030, *5 (S.D.N.Y. June 2, 1989)

and citing cases). <u>See also</u> <u>Capellan</u>, 975 F.2d at 70 (referring to

"mob intimidation of the jury" as a circumstance that could be

considered an unconscionable breakdown of the state inquiry

process). To qualify for federal habeas review, an unconscionable

breakdown in process must be one that calls "into serious question

whether a conviction is obtained pursuant to those fundamental

notions of due process that are at the heart of a civilized

society." <u>Capiello v. Hoke</u>, 698 F. Supp. 1042, 1050 (E.D.N.Y. 1988),

<u>aff'd</u>, 852 F.2d 59 (2d Cir. 1988); <u>see also</u> <u>Calderon v. Perez</u>, 2011

WL 293709, *32 (S.D.N.Y. Jan. 28, 2011), adopted, 2011 WL 1405029 (S.D.N.Y. Apr. 5, 2011).

In the face of this high threshhold, petitioner supports his petition for habeas relief only by reasserting his original claims regarding the constitutionality of the search and seizure and arguing that the court erred in denying him a suppression hearing. Neither of these arguments is sufficient to demonstrate an "unconscionable breakdown" of an otherwise adequate process. Under the New York Criminal Procedure Law, the court may summarily deny a suppression motion without a hearing if it finds that the moving party has failed to state grounds for relief or that the sworn factual allegations do not support those grounds. Crim. Proc L. § 710.60(3); see, e.g., People v. Mendoza, 82 N.Y.2d 415, 432-33, 604 N.Y.S.2d 922, 930 (1993); People v. Long, 36 A.D.3d 132, 133, 824 N.Y.S.2d 249, 251 (1st Dept. 2006). In this case, the trial court had the authority to deny the motion if it determined that Reddick had failed to show a factual dispute on a material issue. See Mendoza, 82 N.Y.2d at 432, 604 N.Y.S.2d at 931. Such a determination by the trial court would not constitute an unconscionable breakdown of process, even if this court deemed the denial to be incorrect. See, e.g., Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977) (recognizing that Stone signifies that federal courts cannot grant

13

habeas on a Fourth Amendment claim "simply because we disagree with the result reached by the state court"); <u>Calderon</u>, 2011 WL 293709 at *33 (citing cases).

That is precisely what occurred here. At the time of the original motion, Reddick did not dispute the facts set forth in the CIS or the VDF. The CIS contained the arresting officers' observations of Davis's and petitioner's behavior relating to the exchange of the Saks bags and cash and the distribution of the money. The CIS also specified that the police had stopped the car after they learned that the vehicle's registration had been suspended, and that they had arrested petitioner for driving without a valid driver's license. (People's App. Br., 7; Suppression Docs., People's Resp. to Omnibus Mot., 3). Rather than challenging this information, Reddick relied on the conclusory assertion that the police had stopped the vehicle for "pretextual" reasons and claimed -- without providing any evidence to contradict the State's account -- that the police had lacked probable cause. (Omnibus Mot., 6-10). As a result, Justice Berkman reasonably concluded that Reddick's suppression motion did not "sufficiently" address, or challenge, the factual presentation found in the prosecutor's summary. (People's App. Br., 11). As noted, even if the state court had erred in its

14

suppression ruling -- which, as we observe below, did not occur[4] -- that does not permit review. See Stone, 428 U.S. at 481-82. As for the process provided to Reddick, it was consistent with state-law requirements.

Additionally, petitioner had the opportunity, of which he availed himself, to seek further trial-court consideration of his Fourth Amendment claim. Following the initial denial, petitioner requested leave to file for reconsideration of the suppression motion, a request that the trial court granted. His new attorney did not file his reargued motion for five months, and when he did, he only reiterated Reddick's original unilluminating arguments. (Mot. to Reargue, 15-18). Petitioner then obtained appellate review, and the Appellate Division considered the merits of the claim before rejecting it. Petitioner also raised the Fourth Amendment claim in his application for leave to appeal to the Court of Appeals, which denied leave.

Given the extensive opportunities available to petitioner to litigate his claim in state court, we conclude that there was no unconscionable breakdown in process. We therefore have no authority to revisit the underlying claim.

---

[4] Infra, at 16-20.

15

Moreover, even if we were to review the denial of a hearing <u>de novo</u>, we would conclude that the trial court's refusal to order a hearing was proper. The New York Court of Appeals has held that the sufficiency of a defendant's factual allegations, and whether a defendant is entitled to a hearing, "should be evaluated by (1) the face of the pleadings, (2) assessed in conjunction with the context of the motion, and (3) defendant's access to information." <u>Mendoza</u>, 82 N.Y.2d at 426, 604 N.Y.S.2d. at 926. Petitioner had access to the relevant information proffered by the State concerning his arrest, including the felony complaint, the People's VDF and the People's write-up of the case contained in the CIS. (Omnibus Mot. 6-7). Despite the availability of this information, petitioner asserted only that the police had exceeded the scope of their authority in arresting him and searching the car, and he did not attempt to contradict any of the facts that the State had alleged regarding the arrest. (Omnibus Mot., 6-11; Am. Pet'n, 3 & Ex. 1, 1). Since Reddick failed to "raise a factual dispute on a material point which must be resolved before the court can decide the legal issue," there was no need for a hearing. <u>People v. Burton</u>, 6 N.Y.3d 584, 587, 815 N.Y.S.2d 7, 10 (2006) (quoting <u>People v. Gruden</u>, 42 N.Y.2d 214, 215, 397 N.Y.S.2d 704, 705 (1977)). Accordingly, the trial court appropriately decided petitioner's motion without a hearing. <u>See</u>, <u>e.g.</u>, <u>In re Shaundale W</u>, 82 A.D.3d 1254, 1254-55, 919 N.Y.S.2d 364,

365 ("the conclusory allegations made in the appellant's motion
papers were insufficient to warrant a hearing") (citing cases); see
also Mendoza, 82 N.Y.2d at 431, 604 N.Y.S.2d at 929.


    Furthermore, the court's conclusion that the police officers
had sufficient authority to arrest petitioner and search him and the
vehicle was fully justified, and at the very least was neither
contrary to, nor an unreasonable application of, Supreme Court
precedent. See 28 U.S.C. § 2254(d)(1) (stating the standard for
granting habeas relief to state prisoners for claims that are
subject to habeas review). The officers were permitted to stop the
car after they had learned that its registration had been suspended.
See, e.g., People v. Robinson, 97 N.Y.2d 341, 349, 741 N.Y.S.2d 147,
151 (2001). Once the car was lawfully stopped, the officers had the
authority to remove all of the occupants from the vehicle. See,
e.g., People v. Robinson, 74 N.Y.2d 773, 774-75, 545 N.Y.S.2d 90,
90 (1989); People v. Green, 80 A.D.3d 1004, 1005, 915 N.Y.S.2d 371,
373 (3rd Dept. 2011) (where initial stop of a vehicle was lawful,
"[t]he officer was . . . acting lawfully in directing defendant, as
a passenger in the vehicle, to exit"). After learning that neither
Davis nor Reddick had licenses, the officers were able to arrest
petitioner based on the traffic infractions even though they did not
have a warrant. See N.Y. Veh & Traf. § 155 ("For the purposes of

17

arrest without a warrant . . . a traffic infraction shall be deemed
an offense"); N.Y. Veh. & Traf. § 401 (requiring that all motor
vehicles be registered); N.Y. Veh. & Traf. § 509 (requiring that all
people who operate a motor vehicle have the proper license to do
so); People v. Rodriquez, 81 A.D.3d 404, 405, 915 N.Y.S.2d 551, 552
(1st Dept. 2011); People v. Chaney, 298 A.D.2d 617, 619-20, 748
N.Y.S.2d 182, 185 (3rd Dept. 2002) (because officer "properly
arrested defendant for traffic infractions . . . Defendant's
argument that the stop was pretextual for a seat belt violation is
therefore meritless").

    Following the arrest, the officers also had the authority to
conduct a search of petitioner and the vehicle. According to the
United States Supreme Court, a "search of any area of the vehicle
in which any evidence might be found" is authorized "[i]f there is
probable cause to believe a vehicle contains evidence of criminal
activity." Arizona v. Gant, 129 S.Ct. 1710, 1721 (2009) (citing
United States v. Ross, 456 U.S. 798, 820-821 (1982)). Similarly, the
New York Court of Appeals has concluded that vehicle searches
subsequent to an arrest for a traffic violation are permissible if
"the officer has reason to fear an assault or probable cause for
believing that his prisoner has committed a crime." People v. Marsh,
20 N.Y.2d 98, 101, 281 N.Y.S.2d 789, 793 (1967); see also People v.

18

Martin, 50 A.D.3d 1169, 1170-71, 854 N.Y.S.2d 789, 791-92 (3rd Dept.
2008) (finding a vehicle search subsequent to arrest proper where
the police had probable cause to believe that defendant had open
containers of alcohol in the vehicle, in violation of New York
traffic laws).

Police may have probable cause to believe that an individual
has committed the crime of criminal possession of stolen property
based on "the totality of the facts known to the officers, at the
scene of the defendant's arrest, combined with their experience and
training." People v. Miller, 149 A.D.2d 538, 541, 539 N.Y.S.2d 809,
812 (2d Dep't 1989). For example, in People v. Thurman, 81 A.D.2d
548, 549, 438 N.Y.S.2d 312, 314 (1st Dep't 1981), the police had
observed the defendants behaving "furtively," carrying objects in
a plastic bag, and examining and distributing the bag's contents
inside a vehicle. In that case, the court found that the police had
lawfully arrested the defendants and searched the vehicle following
the defendants' inconsistent answers about the presence and
ownership of credit cards. Id. at 549, 438 N.Y.S.2d at 314; see also
People v. Wilson, 52 A.D.3d 239, 240, 859 N.Y.S.2d 165, 165 (1st
Dept. 2008) (finding that a police officer had probable cause to
arrest defendant where he engaged in "furtive behavior" that the
officer recognized, "based upon her training and experience," as

19

indicative of criminal activity, gave inconsistent answers to her inquiry, and produced identification and a credit card that did not belong to him).

Similarly here, the officers had probable cause to believe that petitioner had committed a crime based on previous observations of Reddick's suspicious behavior and the exchange of cash and shopping bags. (People's App. Br., 1-2). Although petitioner asserts that "the police did not fear a weapon, and did not see anything intrinsically illegal," he provided no additional support for this conclusion. (Am. Pet. Ex. 3, 5). Without contrary evidence, the trial court could reasonably conclude that the officers had probable cause to believe that Reddick had committed the crime of possession of stolen property, which justified the search of the vehicle following the arrest for the traffic violations.

## CONCLUSION

For the reasons stated, we recommend that the writ be denied and the petition dismissed with prejudice. We further recommend that a certificate of appealability not issue in the absence of any issue worthy of appellate review.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Richard J. Holwell, Room 1950, and to the chambers of the undersigned, Room 1670. Failure to file timely objection will constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See Thomas v. Arn, 474 U.S. 140, 150 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Small v. Secretary of Health and Human Services, 629 F.2d 1, 16 (2d Cir. 1989); 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:     New York, New York
           August 4, 2011


                                  Respectfully Submitted,


                                  _____
                                  MICHAEL H. DOLINGER
                                  UNITED STATES MAGISTRATE JUDGE

21

Copies of the foregoing Report and Recommendation have been mailed this date to:

Gregory Reddick
07-A-2835
Franklin Correctional Facility
P.O. Box 10
62 Barehill Road
Malone, New York 12953

Lea L. La Ferlita, Esq.
Assistant Attorney General
120 Broadway
New York, New York, 10271